248 N.J. Super. 588 (1991)
591 A.2d 991
CHEYENNE CORPORATION, PLAINTIFF-RESPONDENT,
v.
TOWNSHIP OF BYRAM, DEFENDANT-APPELLANT.
WESTERN WORLD, INC., PLAINTIFF-RESPONDENT,
v.
TOWNSHIP OF BYRAM, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 1991.
Decided June 6, 1991.
*590 Before Judges BAIME and A.M. STEIN.
Kevin D. Kelly argued the cause for appellant (Kelly, Gaus & Holub, attorneys; Kevin D. Kelly and Pamela Lee Matarrese on the brief).
Richard M. Conley argued the cause for respondents (Conley & Haushalter, attorneys; Richard M. Conley on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
The Farmland Assessment Act of 1964 (N.J.S.A. 54:4-23.1 to -23.23) provides preferential tax treatment to land devoted to agricultural or horticultural use. N.J.S.A. 54:4-23.2. In order to qualify, the owner must establish that (1) the property consists of at least five acres, and (2) he derives a minimum average income of $500 for the first five acres and $.50 for each additional acre during the two years immediately preceding the tax year in issue. N.J.S.A. 54:4-23.2; N.J.S.A. 54:4-23.5. At issue here is whether income derived from the agricultural use of two contiguous parcels owned by separate corporate entities can be aggregated for the purpose of obtaining the benefit of farmland assessment. Also in question is whether land used in violation of the local zoning ordinance can qualify for farmland assessment.

I.
This case is the sequel to Byram Tp. v. Western World, Inc., 111 N.J. 222, 544 A.2d 37 (1988). There, our Supreme Court held on the basis of the record before it that the woodland property of Cheyenne Corporation and Western World, Inc. was entitled to farmland assessment for the tax year 1983. This appeal pertains to tax years 1985 through 1989.
The facts are not in dispute. The taxpayers are related, but separate and independent, corporations. Although Michael Stabile, Sr., and his wife, Mary, are the principals of both companies, *591 each corporation maintains separate records, books, and receipts. The property owned by Cheyenne Corporation consists of approximately 94 acres. Of that total acreage, 19 acres are operated as a family amusement park, which is not assessed as farmlands and is not an issue here. The tax status of the remaining 75 acres of woodlands is in dispute. The rest of the property, some 48 acres of woodlands, is owned by Western World, Inc. Cheyenne purchased its parcel in 1964. In 1980, Western World purchased the contiguous tract.
The taxpayers unsuccessfully applied to Byram Township for farmland assessment in each of the tax years from 1985 through 1989. The Sussex County Board of Taxation affirmed the Township's determination. The taxpayers filed complaints with the Tax Court, which were consolidated for the purpose of trial. In a reported opinion, the Tax Court granted the taxpayers' pretrial motion to exclude evidence that farming was not a permitted use under the Township's zoning ordinance. Cheyenne Corp. v. Byram Tp., 10 N.J. Tax 412 (Tax Ct. 1989). In barring the Township from presenting this evidence, the court reasoned that "lawful use [of property] is not a requirement for farmland assessment qualification." Id. at 416. Following a trial, the court entered a judgment granting the taxpayers farmland assessment for each of the tax years in question. In its letter opinion, the court assumed that the income separately derived by each corporation was insufficient to satisfy the statutory requirement. The court nevertheless held that separate legal ownership does not preclude aggregating acreage and income to meet the requirements of farmland assessment.

II.
We hold that amounts earned from the agricultural use of contiguous tracts of land owned individually by different corporate entities cannot be combined to satisfy the minimum average income requirement contained in the statutory scheme. In reaching this conclusion, we stress the fundamental principle *592 that ordinarily all property must bear its just and equal share of the public burden of taxation. Princeton Univ. Press v. Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961). Statutes granting exemption from taxation represent a departure from this rule. Ibid. Historically, our courts have resolved all doubts against those seeking the benefit of a statutory exemption. See, e.g., Cosmair, Inc. v. Director, N.J. Div. of Taxation, 109 N.J. 562, 569-570, 538 A.2d 788 (1988); Fairlawn Shopper, Inc. v. Director, Div. of Taxation, 98 N.J. 64, 73, 484 A.2d 659 (1984); Fedders Financial Corp. v. Director, Div. of Taxation, 96 N.J. 376, 386, 476 A.2d 741 (1984); Boys' Club of Clifton, Inc. v. Jefferson Tp., 72 N.J. 389, 398, 371 A.2d 22 (1977); Deubel v. Kervick, 33 N.J. 568, 574, 166 A.2d 561 (1960); Teaneck Tp. v. Lutheran Bible Institute, 20 N.J. 86, 90, 118 A.2d 809 (1955).
We are convinced that the Tax Court applied the exemption beyond the ascertainable intention of the Legislature. Deubel v. Kervick, 33 N.J. at 574, 166 A.2d 561. The purpose of the Farmland Assessment Act is to secure tax relief to New Jersey farmers and to encourage state agriculture. Byram Tp. v. Western World, Inc., 111 N.J. at 228, 544 A.2d 37. Its genesis can be found in reports issued by the Commission on State Tax Policy and the Farmlands Assessment Committee, which noted the adverse effects of the mounting property tax burden on New Jersey farmers. These efforts culminated in the amendment of the Tax Clause to permit eligible property to be assessed as "farmland," N.J. Const. art. VIII, § 1, para. 1(b), and the enactment of the Farmland Assessment Act which provides qualifications to be satisfied for preferred tax treatment. N.J.S.A. 54:4-23.5. The underlying public policy is to encourage farmers to continue to farm their land in the face of dwindling incomes and increasing costs. Byram Tp. v. Western World, Inc., 111 N.J. at 228, 544 A.2d 37. The statutory scheme represents a legislative effort to slow the transition of open and rural land to development, ameliorate problems of urban and suburban growth in rural municipalities, and encourage *593 the preservation of open spaces. Id. at 228-229, 544 A.2d 37; see also East Orange v. Livingston Tp., 102 N.J. Super. 512, 532-536, 246 A.2d 178 (Law Div. 1968), aff'd 54 N.J. 96, 253 A.2d 546 (1969); Centex Homes of New Jersey, Inc. v. Manalapan Tp., 4 N.J. Tax 599, 605-607 (Tax Ct. 1982), certif. vacated 95 N.J. 218, 470 A.2d 433 (1983).
The Tax Court's interpretation of the statutory income requirement tends to subvert these legislative objectives. The danger is that owners of small parcels will attempt to aggregate their separately owned lands to meet the five acre minimum requirement, and combine their earnings to satisfy the income qualifications. This will encourage suburban sprawl rather than ameliorate problems of urban growth in rural areas. Perhaps promotion of suburban farming is a worthwhile objective. However, this was not the purpose of the Legislature in enacting the Farmland Assessment Act.
Contrary to the taxpayers' assertion, the statutory language does not support the construction they urge. In setting forth the prerequisites for farmland assessment, the statute expressly refers to the necessity of an application "by the owner." N.J.S.A. 54:4-23.6. The statute is entirely silent respecting the possibility of aggregating acreage or income to satisfy the requirements of the Act. Had the Legislature intended to permit such aggregation, it would have said so. Although the Act clearly contemplates that the land may be owned by more than one person or entity, see N.J.S.A. 1:1-2, nothing in the statutory scheme evinces a design to allow combining land and earnings to meet minimum requirements.
The taxpayers point to N.J.S.A. 54:4-23.18 as supporting their interpretation of the Act. That section provides that "[w]here contiguous land in agricultural or horticultural use in one ownership is located in more than one taxing district, compliance with the [five] acre minimum area requirement shall be determined on the basis of the total area of such land...." Ibid. [Emphasis added]. The taxpayers claim that the Legislature's *594 inclusion of the italicized language where contiguous land is located in more than one taxing district discloses an intent to impose the requirement of single legal ownership in only that special circumstance. We disagree. We read the requirement of ownership in a single entity in N.J.S.A. 54:4-23.18 as merely declarative of what is implicit in other sections. It would make no sense to impose the requirement of single legal ownership only where property is located in more than one taxing district.
The taxpayers' reliance on Shein v. North Brunswick Tp., 9 N.J. Tax 1 (Tax Ct. 1986), is misplaced. That case concerned three lots which were farmed by a family as a single "economic and functional unit." Id. at 4. One of the lots was owned by a defunct corporation whose stock was, in turn, owned by the same family. There had been a bona fide attempt to convey the land to the family by the corporation, but the deed was defective. Id. at 3. Under these highly unusual circumstances, the Tax Court held that the lot technically owned by the skeleton corporation could be considered as belonging to the family to satisfy the Act's minimum acreage requirement. Id. at 8. We do not read Shein as supporting the broad proposition urged by the taxpayers in this case, i.e., that acreage and income can be aggregated where separate parcels are owned individually by more than one distinct jural entity. Where taxpayers have chosen to utilize different corporate structures to purchase and hold separate tracts of land, we discern no basis to disregard the distinct legal entities so created. See State Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 500, 468 A.2d 150 (1983). To the extent that the Tax Court's opinion in Shein can be interpreted to conflict with our holding here, it is disapproved.

III.
We next consider whether property devoted to agricultural or horticultural use in violation of a local zoning *595 ordinance can qualify for farmland assessment. The Tax Court construed our Supreme Court's decision in Byram Tp. v. Western World, Inc., 111 N.J. at 222, 544 A.2d 37, as barring a municipality from denying farmland assessment on the basis that agriculture or horticulture is not a permitted use under its zoning ordinance. We disagree with this interpretation.
In Clearview Estates, Inc. v. Mountain Lakes Bor., 188 N.J. Super. 99, 456 A.2d 111 (App.Div. 1982), we held that "land used in violation of the local zoning ordinance can[not] qualify for farmland assessment." Id. at 105, 456 A.2d 111. We said that superimposed upon the requisites of the Act was the requirement that the agricultural or horticultural use must be lawful; it must be a permitted use under the municipality's zoning ordinance. Ibid. In the course of our opinion, we observed that the taxpayer bears the burden of establishing he is entitled to farmland assessment and that agriculture or horticulture constitutes a permitted use. Ibid. See also White v. Bernardsville Bor., 9 N.J. Tax 122 (App.Div. 1987); Mt. Hope Mining Co. v. Rockaway Tp., 8 N.J. Tax 570 (Tax Ct. 1986); L & Z Realty Co., Inc. v. Ringwood Bor., 6 N.J. Tax 450 (Tax Ct. 1984).
In Byram Tp. v. Western World, Inc., which as previously mentioned involved this property in the tax year 1983, the Tax Court had applied the Clearview principle and found that the taxpayers' use of their property for the production and sale of trees and forest products was a prohibited use. 111 N.J. at 230, 544 A.2d 37. We affirmed in an unreported opinion. Id. at 231, 544 A.2d 37. However, the Supreme Court granted certification, reversed our judgment, and reinstated the Sussex County Board of Taxation's grant of farmland assessment. Id. at 237, 544 A.2d 37. Contrary to the taxpayers' contention, the Court did not overrule our holding in Clearview that property used in violation of a municipality's zoning ordinance cannot qualify for farmland assessment. Instead, it was said that "the record before the Tax Court was plainly insufficient to establish... the taxpayers' current use of the property violates the *596 zoning ordinance...." Id. at 230, 544 A.2d 37. In that respect, it was emphasized that "[t]he Tax Court's denial of farmland assessment was ... based on an untested assumption...." Id. at 232, 544 A.2d 37. The Court disapproved of that portion of our opinion in Clearview which placed upon the taxpayer the burden of proving that agriculture or horticulture was a permitted use. Id. at 230, 544 A.2d 37. Rather, the municipality was said to bear "the burden of proving the ineligibility of the property based on zoning nonconformity...." Id. at 230-231, 544 A.2d 37. The Court added that its holding did not "prevent the municipality from attempting to make a sufficient showing in later tax years...." Id. at 235, 544 A.2d 37. It anticipated, however, that "to the extent the Township seeks to deny farmland assessment because of zoning violations, such violations would ordinarily be established in separate antecedent actions before appropriate tribunals...." Ibid.
In this case, the Tax Court seized on this language and barred the Township from presenting evidence of a zoning violation. The Tax Court held that "lawful use is not a requirement for farmland assessment qualification." Cheyenne Corp. v. Byram Tp., 10 N.J. Tax at 416. The court reasoned that the taxpayers' alleged illegal use of their properties should have been the subject of an antecedent action enforcing the Township's zoning ordinance. Ibid.
We agree that ordinarily zoning violations should be tried in a tribunal other than the Tax Court. See State v. P.T. & L. Constr. Co., 77 N.J. 20, 31, 389 A.2d 448 (1978). Nevertheless, we are convinced that a violation of the municipality's zoning ordinance is cognizable in the Tax Court in determining farmland assessment qualifications even in the absence of a separate antecedent action. Concerns of judicial integrity are implicated. The Tax Court should not passively lend its aid to a taxpayer's zoning noncompliance. Nor should it accord favored treatment to an undeserving owner of land. Innocent taxpayers should not be required to shoulder an extra financial burden *597 merely because a municipality has previously defaulted in its obligation to enforce its zoning ordinance.
We thus hold that the Tax Court erred when it barred the Township from presenting evidence that agriculture or horticulture was a prohibited use.

IV.
The Township's remaining contentions are clearly without merit. R. 2:11-3(e)(1)(E). At oral argument, we were advised by both counsel there may be evidence, which was not considered by the Tax Court, supporting the conclusion that income derived by each taxpayer is sufficient to meet the statutory requirement. This evidence should be considered to determine whether the statutory income requirements are satisfied.
Accordingly, the judgment of the Tax Court is reversed and the matter is remanded for further proceedings.